**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION at ASHLAND**

Civil Action No. 10-67-HRW

**LONNIE NIXON and WENDY NIXON,**
**and**
**LONNIE NIXON and WENDY NIXON,**
**as Parents, Guardians and Next Friends of**
**AUDRIE NIXON,**                                        **PLAINTIFFS,**

v.                      <u>**MEMORANDUM OPINION AND ORDER**</u>

**GREENUP COUNTY SCHOOL DISTRICT**, *et al.*,            **DEFENDANTS.**

This matter is before the Court upon Defendants' Motion for Summary

Judgment [Docket No. 31].

**I.      FACTUAL AND PROCEDURAL HISTORY**

**A.      Audrie Nixon**

At the time this civil action was filed, Audrie Nixon was attending the

second grade at McKell Elementary School, in Greenup County Kentucky.  She is

a Type I diabetic.  On September 5, 2008, the school adopted a plan for

accommodating Audrie's condition pursuant to Section 504 of the Rehabilitation

Act of 1973, 29 U.S.C. 794.  A plan such as this is commonly referred to as a "504

plan."   The first such 504 Plan for Audrie was adopted on September 5, 2008 and

again adopted, with some modification,  on August 13, 2009  [Docket No. 48,

Exhibits 4 and 7]. Among other things, the plans required: (1) a trained staff member and nurse were to be present at all times; (2) Audrie was to be "dosed" for all carbohydrate food; (3) boluses, blood glucose testing and ketone testing were to be administered by the nurse or a parent; (4) if blood sugar level was above 250 and/or ketones were present, the parent was to be notified; (5) blood testing was required whenever Audrie was suspected of having low blood sugar; (6) a parent was to be notified if Audrie's blood sugar tested less than 50 on one reading or less than 75 on two consecutive readings; (7) a parent was to be notified if Audrie's blood glucose exceeded 300 at any time or exceeded 250 on two consecutive readings if ketones were present; and (8) in an emergency, Glucagon was to be administered, 911 called and a parent notified [Docket No, 48-4].

### B. Wendy and Lonnie Nixon

Audrie's parents, Wendy and Lonnie Nixon were employed by the Greenup County School District as teachers at McKell Elementary. Wendy Nixon taught at McKell Elementary from July 2008 until May 2009. Lonnie Nixon was hired on limited contracts for four separate school years 2006-2007 through 2009- 2010.

Both were *non-tenured* employees.

On May 5, 2009, both Wendy and Lonnie Nixon were advised, in writing, that their contracts would not be renewed for the 2009-2010 school year [ Docket

2

No. 22-2, pg.3 and Docket No. 21-1, pg. 33].   According to the record, all non-tenured teachers receive non-renewal letters which may be rescinded, depending upon the evaluation by the school principal [Docket No. 27, pg. 8-9].

By letter dated June 1, 2009, Lonnie Nixon was notified that his notification of non-renewal had been rescinded and that he would, in fact, having a teaching position at McKell Elementary during the 2009-2010 school year [Docket No. 21-1, pg. 43].  Wendy Nixon did not receive such a letter.

On August 14, 2009, Wendy Nixon filed a Complaint with the Office of Civil Rights regarding Audrie's 504 Plan.  Wendy Nixon alleged that the school was not following the plan and, thereby, endangering Audrie's health and welfare[Docket No. 22-1, pg. 7-8].

On January 15, 2010, Wendy Nixon filed a similar complaint with the American Diabetes Association [Docket No. 21-1, pg. 9-10].

A letter in the same regard was sent to the Kentucky Educational Standards Board from Lonnie Nixon on January 15, 2010 [Docket No. 22-1, pg. 14].

By letter dated April 21, 2010, Lonnie Nixon was advised that his contract would not be renewed for the 2010-2011 school year [Docket No. 21-1. Pg.33].

During the summer of 2010, the Nixons moved from South Shore, Kentucky to Supply, North Carolina where Lonnie Nixon had accepted employment in the

Brunswick County School District.

### C.    The Complaint

Lonnie Nixon and Wendy Nixon instigated this civil action on July 7, 2010

against Defendants, Greenup County School District, Randy Hughes, and Thomas

J. Kouns.    Plaintiffs state in their Complaint that Audrie Nixon was covered by a

504 Plan with the Defendant, Greenup County School District, to enable her to

participate in the educational opportunities at McKell Elementary and to safeguard

her health and life while at McKell Elementary. They allege that the Defendants

repeatedly violated the 504 Plan, thereby jeopardizing Audrie's health, welfare,

safety and life.  They allege that as a result of these violations they suffered severe

emotional distress as they were greatly concerned for their daughter's well being.

They further allege that Defendant ignored all complaints, failed to comply with

the 504 Plan and acted in reckless disregard, and that the Greenup County School

District intentionally discriminated against Audrie Nixon by failing to comply

with her 504 Plan.    In addition, they claim that their respective employments

were terminated without legitimate reason or rationale, but, rather in retaliation for

their attempts to protect Audrie's rights under her Section 504 Plan.

Defendants deny all the allegations and seek judgment as a matter of law on

all claims asserted against them.

## II.    STANDARD OF REVIEW

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56, the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact."   Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery.  In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

## III.   ANALYSIS

### A.    Factual issues preclude summary judgment as to Plaintiffs' claim that Defendants' violated the 504 Plan.

In Count I of their Complaint, Plaintiffs allege that Defendants intentionally discriminated against Audrie by failing to comply with the 504 Plan [Docket No.

5

1, ¶ 30].

§ 504 of the Rehabilitation Act and the Kentucky Civil Rights Act prohibit discrimination on the basis of disability.  Under both statutes, the elements are of a claim are essentially the same:[1] (1) Plaintiff must be a person with a disability; (2) Plaintiff must be "otherwise qualified" for participation in the relevant program; and (3) Plaintiff must be excluded from participation in or denied the benefits of that program or otherwise subjected to discrimination by reason of his or her disability. *See generally, Brohm v. JH Properties, Inc.*, 149 F.3d 517 (6th Cir. 1998).

For the purposes their motion, the Defendants agree that Plaintiff Audrie Nixon is a person with a disability and is otherwise qualified for participation in the general educational program offered by Defendants.  Therefore, this Court's inquiry is focused on the third prong, to-wit, whether Audrie was discriminated against by reason of her disability.

Plaintiffs claim that Defendants did not comply with the agreed upon accommodations, set forth in the 504 Plan, and, thus, discriminated against Audrie.

---

[1]  Under the Rehabilitation Act, there is the additional requirement that the Defendant must be an entity receiving federal funds. That element is uncontested here.

In seeking summary judgment, Defendants rely upon the testimony of
Sharon Moore, former 504 Coordinator and Director of Special Education of the
Pike County School District.  Ms. Moore opined that the Greenup County School
District did not ignore the Nixon's complaints or fail to comply with Audrie
Nixon's 504 Plan during the 2009-10 school year. There were several meetings
held throughout the school year to revise the 504 Plan and at each meeting the
complaints presented by Mr. and Mrs. Nixon were addressed and changes were
made to the 504 Plan several times. As these complaints were single or occasional
incidents, it is Ms. Moore's opinion that these incidents do not constitute
intentional discrimination against Audrie Nixon.      In support of her opinion, Ms.
Moore noted that the Greenup County School District assigned a school nurse,
Nurse Bradley, to McKell Elementary School full-time at the beginning of the
2009-10 school year and employed additional substitute nurses who could be
called when the full-time nurse was absent. Additionally, an aide, Leisa
Timberlake, was assigned to Audrie all day to assist with monitoring blood sugar
levels, assisting with snacks, and other diabetes care activities. Beginning August
12, 2009, a Daily Dietary/Blood Sugar Log was kept and documented for lunch
and snack carbohydrate count and insulin amount, Blood Sugar Checks with time
and reading and notes as to snack or other action taken, ketone checks and calls

7

and/or contacts with parents. The logs were sent home daily. A review of the logs show that Audrie's blood sugar was monitored frequently throughout the day by the assigned aide and/or nurse with actions taken based upon the readings.

Defendants argue that, in light of their expert's testimony, Plaintiffs fail to demonstrate any evidence of record that Defendants were deliberately indifferent to Audrie's rights or that a violation was the obvious consequence of the School District's actions.

Plaintiffs dispute the validity of Ms. Moore's opinion by pointing out that it was based upon a misunderstanding of certain key facts. They contend that Ms. Moore wrongly assumed that Nurse Bradley worked solely at McKell Elementary, wherein fact, Nurse Bradley testified that her time was divided amongst three schools during the pertinent time [Docket No. 33, pg. 7-8]. Plaintiffs further aver that Ms. Moore assumed that the aide assigned to Audrie, Leisa Timberlake, had no other duties but to attend to Audrie. Ms. Timberlake testified that she had many other duties [Docket No. 39, pg. 15-16]. Plaintiffs also point out that Ms. Moore testified that the August 13, 2009 504 Plan, did not include the checking of ketones. A misconception she recognized later in her deposition.

Further, Plaintiffs emphasize their repeated complaints of the school's failure to comply with the Plan. The record, specifically the deposition transcripts

of Wendy and Lonnie Nixon, set forth numerous instances of their reports to the school in this regard. This testimony is in direct conflict with that of Defendant's expert witness. As such, factual issues abound with regard to whether and to what extent Defendants failed to comply with the 504 Plan. As such, summary judgment as to this claim is not warranted.

**B.** **Plaintiffs' Equal Protection, Due Process and First Amendment claims fail as a matter of law.**

      i.    Equal Protection and Due Process

In Count IV of their Complaint, Plaintiffs claim that Defendants violated the Fourteenth Amendment of the United States Constitution. They specifically state that Defendants violated Audrie Nixon's civil rights by "denying her access to services and educational opportunities and by endangering her health, safety, welfare and life" and "depriving her property interest in education without due process of law due to their repeated non-compliance with the 504 Plan" [Docket No. 1, ¶ 44-45].

Although Plaintiffs allege a violation of constitutional rights, that is not sufficient to raise a due process or equal protection claim under the Fourteenth Amendment. While Audrie Nixon may have a protected interest in her education, she cannot and has not demonstrated that the Defendants deprived her of a public

education without due process. *See e.g. Long v. Board of Education of Jefferson County, Kentucky*, 121 F.Supp.2d 621 (W.D.Ky. 2000)(recognizing that a due process claim may be properly stated when a student is barred from attending school by way of a suspension). In this case, there is no allegation, or evidence, that Defendants took any action to prevent Audrie from attending school or availing herself of the administrative process appurtenant to the 504 Plan.

Nor can Plaintiffs maintain a due process claim with regard to the employment of Wendy and Lonnie Nixon. It is undisputed that both were non-tenured teachers. By definition, therefore, they do not have a protected property interest in continued employment. Therefore, they cannot claim a violation of due process with regard to their employment.

> ii.   First Amendment

Plaintiffs Lonnie and Wendy Nixon allege that Defendants terminated their employment in retaliation for their exercise of their First Amendment rights.

An analysis of this claims beings with determining whether Plaintiffs were, in fact, engaging in activity protected by the First Amendment. Whether a public-employee plaintiff engages in constitutionally protected speech depends on whether he or she is speaking as a citizen on a matter of public concern, and whether his or her interest in so speaking outweighs the State's interest in

promoting effective and efficient public service. If the answer to both inquiries is

yes, the speech is protected. *See Condiff v. Hart County School District*, 770

F.Supp.2d 876, 888 (W.D.Ky. 2011) (citations omitted).

In this case, the speech at issue is Plaintiffs Wendy and Lonnie Nixon's

dissatisfaction with the 504 Plan and concern for their daughter, Audrie.. They are

parents, speaking on behalf of their child. While this speech is important, it is not

entitled to Constitutional Protection.

Even if Plaintiffs were to describe their speech as part of their duties as

teachers at McKell Elementary, it stills falls outside the purview of the First

Amendment. "When public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for First Amendment purposes,

and the Constitution does not insulate their communications from employer

discipline." *Id.* (citations omitted). Therefore, characterizing their speech as part

of their duties as teachers does not bring the speech within the ambit of the First

Amendment.

Therefore, Plaintiffs cannot maintain their claims under the First

Amendment.

11

**C.    Factual issues preclude summary judgment as to Lonnie Nixon's claims of retaliation and intentional infliction of emotional distress .**

In Counts III and VI of their Complaint, Plaintiffs claim that Lonnie Nixon's employment was terminated in  Counts III and VI of their Complaint, Plaintiffs claim that Lonnie Nixon's employment was termination in retaliation for his efforts to protect Audrie's rights under the 504 Plan and that Defendants conduct was designed to intentionally inflict severe emotional distress upon him [Docket No. 1, ¶39 and 57].

<u>i.</u>    <u>Retaliation</u>

In order to state a *prima facie* case for Section 504 retaliation, Lonnie Nixon must establish that (1) he was engaged in a protected activity, (2) he suffered an adverse action and (3) the adverse action was taken because of the protected activity. *Penny v. United Parcel Service*, 128 F.3d 408, 417 (6th Cir. 1997).[2]

If he successfully presents a *prima facie* case of retaliation, the burden shifts

---

[2]  *Penny* addresses retaliation under the Americans with Disabilities Act.  However, the Sixth Circuit has held that "because the purpose, scope and governing standards of the acts are largely the same, cases construing one statute are instructive in construing the other." *Doe v. Woodford County Board of Education*, 213 F.3d 921. 925 (6th Cir. 2000).  The Kentucky Civil Rights also uses the ADA / Section 504 analysis. *Brohm*, 149 F.3d at 517.

to the Defendants to show by a preponderance of the evidence that there was a

legitimate, non-discriminatory

reason for the adverse employment action. *Boger v. Wayne County*, 950 F.2d 316,

322 (6th Cir. 1991). The burden then shifts back to the Plaintiffs to establish that

Defendants' proffered reason for the adverse employment action was merely

pretextual. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537 (6th Cir. 2003).

In this case, Lonnie Nixon claims that was not hired for the 2010-2011

school year in retaliation for his advocacy for Audrie.

Defendants argue that he was not re-hired because the family had decided to

move. Plaintiffs urge that Lonnie Nixon's complaints regarding the 504 Plan

motivated the Defendants to terminate his employment. Defendants insist they

were not and the adverse employment action would have been taken irrespective

the disagreements concerning the 504 Plan.

This is a classic "he said - he said" scenario, which is to be resolved by a

jury, not by a Court by way of summary judgment.

<u>ii.</u>   <u>Intentional infliction of emotional distress</u>

Lonnie Nixon's claim of emotional distress alleged in Count VI, however,

does not require resolution by a jury. The plaintiff's burden of establishing a

*prima facie* case of intentional infliction of emotional distress ("IIED") is

extremely difficult. Kentucky courts have instructed that, in order for a plaintiff to recover for the intentional infliction of emotional distress, a plaintiff must show that: "(1) the wrongdoer's conduct was intentional or reckless, (2) the wrongdoer's conduct was outrageous and intolerable, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress suffered is severe." *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005) (citation omitted).

"[N]ot every upset plaintiff can recover for emotional distress," however. *First and Farmer's Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 143 (Ky. Ct. App. 1988).

Rather, Kentucky courts have looked to the commentary to section 46 of the *Restatement (Second) of Torts* for guidance in defining the type of acts that will justify tort recovery. That commentary provides:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been extreme in degree, as to

14

> go beyond all bounds of decency, and to be
> regarded as atrocious, and utterly intolerable
> in a civilized community. Generally, the case
> is one in which the recitation of the facts to
> an average member of the community would
> arouse his resentment against the actor, and lead
> him to exclaim, "Outrageous!"

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2004) (citing

*Restatement (Second) of Torts* § 46(1) cmt. d (1965)).

Kentucky courts have allowed recovery for intentional infliction of

emotional distress in instances in which a defendant:

> (1) harassed the plaintiff "by keeping her under surveillance at
> work and home, telling her over the CB radio that he would put
> her husband in jail and driving so as to force her vehicle into an
> opposing lane of traffic"; (2) intentionally failed to warn the
> plaintiff for a period of five months that defendant's building,
> in which plaintiff was engaged in the removal of pipes and
> ducts, contained asbestos; (3) engaged in "a plan of attempted
> fraud, deceit, slander, and interference with contractual rights,
> all carefully orchestrated in an attempt to bring [plaintiff] to his
> knees"; (4) committed same-sex sexual harassment in the form
> of "frequent incidents of lewd name calling coupled with
> multiple unsolicited and unwanted requests for homosexual
> sex"; (5) was a Catholic priest who "used his relationship [as
> marriage counselor for] the [plaintiff] husband and the wife to
> obtain a sexual affair with the wife"; (6) agreed to care for
> plaintiff's long-time companion animals, two registered
> Appaloosa horses, and then immediately sold them for
> slaughter; and (7) subjected plaintiff to nearly daily racial
> indignities for approximately seven years.

15

*Stringer,* 152 S.W.2d at 789-790 (footnotes and citations omitted). Under this strict standard, "[m]ere termination clearly does not rise to the level of outrageous conduct required to support an IIED claim." *Benningfield*, 183 S.W.3d at 572. Nor does actions which are immature, petty, and destructive of an efficient working environment. *Stringer,* 152 S.W.2d at 789-790

Indeed, as this court has held in a case seeking recovery under similar Ohio tort law, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

In this case, nothing in the record, as a matter of law, comes close to approaching the level of outrageous behavior necessary to support a claim for intentional infliction of emotional distress under established Kentucky law. Indeed, Plaintiffs do not specifically address this claim in response to Defendants' dispositive motion. The Court finds that Lonnie Nixon's claim for intentional infliction of emotional distress fails as a matter of law.

**D.      Wendy Nixon's claims are barred by the statute of limitations.**

In Counts II and VI of the Complaint, Wendy Nixon alleges retaliation for her efforts to protect Audrie's rights under the 504 Plan and intentional infliction

16

of emotional distress at the hands of the Defendants   [Docket No. 1, ¶35 and 57].

The statute of limitations for an action alleging a violation of civil rights, under either federal or Kentucky law, is one year.  KRS § 413.140(1)(1) and *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007).

Wendy Nixon was advised of her non-renewal on May 5, 2009.   Plaintiffs filed this lawsuit over one year later, on July 7, 2010.   Therefore, Wendy Nixon's claim falls outside the statute of limitations.

Plaintiffs maintain that the critical date is the first day of the 2009-2010 school year, which was August 10, 2009.   They contend that until the first day of school, Wendy Nixon reasonably believed she could be re-hired.   Therefore, Plaintiffs argue that the statute did not begin to run until August 10, 2009 and that her claim did not accrue until August 10, 2010.

The Court finds that the date of termination, the critical date is  May 5, 2009.  Plaintiff's belief that her termination as not final does not affect the analysis.  As such, Wendy Nixon's claims are untimely.

### E.    Defendants Hughes and Kouns Are Entitled to Immunity In Their Individual Capacities.

"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate

'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Holzemer v. City of Memphis,* 621 F.3d 512, 518–9 (6th Cir.2010). The inquiry outlined by the Sixth Circuit requires that the Court determine, "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred." *Holzemer,* 621 F.3d at 519. In this case the individual named Defendants have not violated the Constitution and are, thus, entitled to immunity.

### F.   The Greenup County School District is Not Entitled To Immunity.

Under Kentucky law, a board of education is an agency of state government and is cloaked with governmental immunity; thus, it can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute. *Yanero v. Davis*, 65 S.W.3d 510, 526-527 (Ky. 20010.   The record indicates that the District did not perform or fail to perform any act or function in any manner that could be construed as negligent. Negligence is a question of fact.

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

(1) Defendants' Motion for Summary Judgment as it pertains to Count Iof the Complaint are **OVERRULED**;

(2) Defendants' Motion for Summary Judgment is **SUSTAINED** as to the remaining claims alleged and

(3)  Defendants' Motion for Summary Judgment is **SUSTAINED** as it pertains to Defendant Randy Houghs in his Individual Capacity and Defendant Thomas J. Kouns in his Individual Capacity.

This is an **INTERLOCUTORY** and **NON- APPEALABLE ORDER.**

This 12th day of September, 2012.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge